IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATRICK MARES,

     Plaintiff,             No. CIV S-06-534 KJM

     vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.        <u>ORDER</u>

_____/

     Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated November 18, 2005, the ALJ determined plaintiff was not disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of severe seizures, left shoulder and knee pain, migraine headaches, back pain and depression, anxiety and personality disorders but these impairments do not meet or medically equal a listed impairment; plaintiff is not credible; plaintiff can perform light work with certain limitations; plaintiff can perform his past relevant assembly work and other jobs available in significant numbers; and plaintiff is not disabled.  Administrative Transcript ("AT") 18-19.  Plaintiff

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1  contends the ALJ improperly rejected the opinion of a treating mental health professional.

2  II.  Standard of Review

3      The court reviews the Commissioner's decision to determine whether (1) it is

4  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

5  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

6  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

7  Substantial evidence means more than a mere scintilla of evidence, but less than a

8  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

9  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

10  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

11  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

12  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

13  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

14  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

15  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

16  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

17  substantial evidence supports the administrative findings, or if there is conflicting evidence

18  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

19  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

20  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

21  1335, 1338 (9th Cir. 1988).

22  III.  Analysis

23      Plaintiff contends the ALJ improperly rejected the opinion of his treating

24  psychiatrist, Dr. Weatherford, and that had the doctor's opinion been considered properly,

25  plaintiff would have been found disabled.  The weight given to medical opinions depends in part

26  on whether they are proffered by treating, examining, or non-examining professionals.  Lester v.

3

Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

The Social Security regulations provide in pertinent part that "[m]edical opinions are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).  In this case, plaintiff's treating psychiatrist, Dr. Weatherford, never opined with respect to any mental residual functional capacity.  The ALJ relied on the opinions of the state agency psychiatrist, consultative examining psychiatrist Dr. Joyce and the testifying psychological expert Dr. Walter, who in turn relied on Dr. Weatherford's treatment notes.  The

1   ALJ's formulation of plaintiff's mental residual functional capacity is consistent with the

2   opinions of those mental health professionals and with Dr. Weatherford's records.  AT 16-18; cf.

3   AT 221, 233-235, 452-453, 572-575.  Although the ALJ did not specifically address the Global

4   Assessment of Functioning (GAF) scores assessed by Dr. Weatherford, there was no error in his

5   failing to do so.  AT 429, 431.  Dr. Weatherford made no assessments with respect to work

6   functions and the GAF does not correlate to the severity assessments utilized in Social Security

7   disability determinations.[2]  Moreover, the assessed GAFs of 50 are on the borderline of the 51-60

8   range, which indicates only moderate symptoms.  The ALJ did not err in his consideration of Dr.

9   Weatherford's treatment notes.

10          The ALJ's decision is fully supported by substantial evidence in the record and

11   based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

12          1.  Plaintiff's motion for summary judgment or remand is denied, and

13          2.  The Commissioner's cross-motion for summary judgment is granted.

14   DATED:  September 26, 2007.

15

16                                                    _____
                                                     U.S. MAGISTRATE JUDGE
17   006
     mares.ss

18
     ────────────────────────
19          [2]  65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) provides in pertinent part:

20          Comment: Two commenters recommended that we discuss the Global
     Assessment of Functioning (GAF) Scale in the introductory paragraphs of final 12.00D.  They
21   noted that we referred to the GAF scale in the preamble to the NPRM (56 FR at 33132) and
     seemed to encourage its use, but then failed to mention it in the proposed rules.
22          Response: We did not adopt the comment.  We did not mention the GAF scale to
     endorse its use in the Social Security and SSI disability programs, but to indicate why the third
23   sentence of the second paragraph of proposed 12.00D stated that an individual's medical source
     "normally can provide valuable additional functional information." To assess current treatment
24   needs and provide a prognosis, medical sources routinely observe and make judgments about an
     individual's functional abilities and limitations.  The GAF scale, which is described in the
25   DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by
     the American Psychiatric Association.  It does not have a direct correlation to the severity
26   requirements in our mental disorders listings.